UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS A. MAYS<br><br>Plaintiff,<br><br>v.<br><br>OASIS MIDSTREAM PARTNERS LP, DANIEL BROWN, MATTHEW FITZGERALD, PHILLIP D. KRAMER, NICKOLAS J. LORENTZATOS, MICHAEL H. LOU, and HARRY N. PEFANIS,<br><br>Defendants. | Case No. _____<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Thomas A. Mays ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is a class action brought by Plaintiff against Oasis Midstream Partners LP ("Oasis Midstream" or the "Company"), and the members of the board of directors of the Company's general partner, OMP GP LLC (collectively referred to as the "GP Board" or the "Individual Defendants" and, together with Oasis Midstream, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of the Company by Crestwood Equity Partners LP ("Crestwood") ("Proposed Transaction").

1

2.     On October 25, 2021, Oasis Midstream entered into an Agreement and Plan of Merger ("Merger Agreement") with Crestwood, Project Falcon Merger Sub LLC, a direct wholly owned subsidiary of Crestwood ("Merger Sub"), Project Phantom Merger Sub LLC, a direct wholly owned subsidiary of Crestwood ("GP Merger Sub"), OMP GP LLC, Crestwood Equity GP LLC, the general partner of Crestwood ("Crestwood GP"), pursuant to which Merger Sub will be merged with and into Oasis Midstream with Oasis Midstream surviving the LP Merger as a wholly owned subsidiary of Crestwood, and GP Merger Sub will be merged with and into OMP GP with OMP GP surviving as a wholly owned subsidiary of Crestwood.

3.     Upon consummation of the Proposed Transaction, the 6,520,944 common units ("Sponsor Units") representing limited partner interests in Oasis Midstream owned by OMS Holdings LLC, a subsidiary of Oasis Petroleum Inc. ("Oasis Petroleum") will be converted into and will thereafter represent the right to receive $150,000,000 in cash in the aggregate, and each other Oasis Midstream common unit owned by Oasis Petroleum or its subsidiaries (other than Oasis Midstream) will be converted into and will thereafter represent the right to receive 0.7680 common units representing limited partner interests in Crestwood.  Each Oasis Midstream common unit issued and outstanding immediately prior to the effective time (other than the Sponsor Units) (the "Public Units") will be converted into and will thereafter represent the right to receive 0.8700 Crestwood common units. All of the limited liability company interests in OMP GP LLC issued and outstanding as of immediately prior to the effective time will be converted into and will thereafter represent the right to receive $10,000,000 in cash.

4.     On December 7, 2021, in order to convince the Company's public common unitholders to provide written consent to approve the Merger Agreement and the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading proxy

statement on form S-4 ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Oasis Midstream and Crestwood; and (ii) the valuation analyses performed by the Conflicts Committee's financial advisor, Jefferies LLC ("Jefferies").

6. The Proposed Transaction is expected to close in early 2022, and written consent of the public common unitholders is currently ongoing. Therefore, it is imperative that the material information omitted from the Proxy is disclosed immediately, so the Company unitholders can properly exercise their rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Oasis Midstream public unitholders immediately.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Oasis Midstream common units trade on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Oasis Midstream common units.

11. Defendant Oasis Midstream is a public company incorporated under the laws of Delaware with principal executive offices located at 1001 Fannin Street, Suite 1500, Houston, Texas 77002. The Company's common unit trades on the Nasdaq under the ticker symbol "OMP."

12. Defendant Matthew Fitzgerald is, and has been at all relevant times, a director of the Company.

13. Defendant Daniel Brown is, and has been at all relevant times, a director of the Company and Chairman of the GP Board.

14. Defendant Phillip D. Kramer is, and has been at all relevant times, a director of the Company and a member of the Conflicts Committee of the GP Board.

15. Defendant Nickolas J. Lorentzatos is, and has been at all relevant times, a director

of the Company.

16. Defendant Michael H. Lou is, and has been at all relevant times, a director of the Company.

17. Defendant Harry N. Pefanis is, and has been at all relevant times, a director of the Company and a member of the Conflicts Committee of the GP Board.

18. Defendant Taylor L. Reid is, and has been at all relevant times, a director of the Company.

19. Defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "GP Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.   **Background and the Proposed Transaction**

20. Oasis Midstream is a Delaware limited partnership with common units traded on the Nasdaq under the symbol "OMP." Oasis Midstream owns, develops, operates and acquires a diversified portfolio of midstream assets in North America. Oasis Midstream was formed by its sponsor, Oasis Petroleum, which owns its general partner.

21. Crestwood is a master limited partnership that manages, owns and operates crude oil, natural gas and NGL midstream assets and operations. Its non-economic general partner interest is held by Crestwood GP. Crestwood's common units are listed on the NYSE under the symbol "CEQP."

22. According to the October 26, 2021, press release announcing the Proposed Transaction:

**Crestwood to Acquire Oasis Midstream Partners in $1.8 Billion Transaction**

HOUSTON, October 26, 2021--(BUSINESS WIRE)--Crestwood Equity Partners LP (NYSE: CEQP) ("Crestwood") and Oasis Midstream Partners LP (NASD: OMP) ("Oasis Midstream") today announced that they have entered into a definitive merger agreement under which Crestwood will acquire Oasis Midstream in an equity and cash transaction valued at approximately $1.8 billion including the assumption of debt. The transaction will largely be equity financed with approximately 33.8 million of newly issued Crestwood common units and $160 million of cash consideration. The transaction is expected to close in the first quarter 2022, subject to customary closing conditions.

Robert G. Phillips, Chairman, President and Chief Executive Officer of Crestwood, commented, "I am very excited to announce the strategic combination with Oasis Midstream, which has strong industrial logic and perfectly aligns with our stated strategy of consolidating high quality midstream assets in our core operating areas. This transaction enhances our competitive position in the Williston and Delaware Basins, enables Crestwood to capture substantial operational, commercial, and capacity synergies as we integrate the Oasis Midstream assets into our existing operations, and substantially expands the long-term contract acreage and inventory dedications of our gathering and processing portfolio. Importantly, we are completing this transaction during a period when macro oil and gas fundamentals are exceptionally supportive of upstream development and there is increasing demand for midstream infrastructure and services."

Mr. Phillips continued, "Additionally, this transaction is expected to be accretive to Crestwood's distributable cash flow per unit in 2022, strengthens our financial position by increasing 2021E pro forma Adjusted EBITDA and positive free cash flow by approximately 40% and maintains our strong balance sheet with pro-forma leverage of approximately 3.5x after the merger is completed. Given the confidence we have in the quality of the Oasis Midstream assets, expectations for continued Bakken development by Oasis Petroleum and our experience in efficiently integrating assets, Crestwood plans to accelerate the return of capital to our common unitholders through a 5% increase in the distribution once the transaction is closed. Through this transaction, we are excited to expand our relationship with the team at Oasis Petroleum and will have a shared vision for how our teams can work together to execute our Williston Basin strategies. We look forward to advancing those strategies with them as an important customer and equity partner going forward.

Danny Brown, Chief Executive Officer of Oasis Petroleum Inc. and Chairman of Oasis Midstream, commented, "The combination of Crestwood and Oasis Midstream creates a midstream leader well positioned with size, scale and a diversified customer base. Crestwood's experienced team brings a track record of operational excellence to handle a large portion of our company's hydrocarbons and produced water in the Williston basin. Oasis Midstream unitholders, including Oasis Petroleum, are receiving compelling value in this transaction and will benefit

from an ownership position in a larger combined company that will have a strong balance sheet and pay attractive distributions."

Transaction Highlights and Rationale

Significantly increases scale and strategic positioning in core basins: In the Williston Basin, this transaction adds significant crude oil, produced water gathering and natural gas gathering and processing assets, doubles the inventory of tier 1 drilling locations dedicated to Crestwood's assets to approximately 1,200 locations across 535,000 dedicated acres and further expands Crestwood's footprint into the western and northern parts of the basin. As the commodity price outlook remains favorable for an acceleration of activity across the basin, this expanded footprint positions Crestwood to more aggressively pursue third party volumes and incremental bolt-on consolidation opportunities to further optimize utilization of existing infrastructure. In the Delaware Basin, the acquired assets provide crude oil and produced water gathering services in Loving, Ward and Winkler counties in Texas, complementary to Crestwood's existing Nautilus natural gas gathering system and Desert Hills produced water gathering system.

Asset integration provides opportunity to realize approximately $45 million in commercial and cost reduction synergies: Crestwood estimates it can capture over $20 million in incremental annual cash flow over the next several years through the successful integration of the Crestwood and Oasis Midstream assets. In the Williston Basin, Crestwood expects to physically connect its Arrow system with Oasis Midstream's Wild Basin system and the combined footprint will have 430 MMcf/d of total processing capacity and current natural gas throughput of approximately 330 MMcf/d. This excess processing capacity eliminates potential processing constraints for existing Arrow customers and creates opportunities to more aggressively commercialize the Oasis Midstream assets as gas volumes across the basin continue to rapidly increase due to heightened gas capture efforts and rising gas-to-oil ratios. Additionally, Crestwood has identified approximately $25 million in annual cost synergies that it expects to realize shortly after close in 2022, driven by operations and maintenance (O&M) reductions from the overlapping asset footprints and the elimination of duplicative G&A expenses.

Enhanced financial strength, flexibility and credit profile: This transaction increases Crestwood's pro forma 2021E Adjusted EBITDA and free cash flow by approximately 40%. The combined entity is expected to generate more than $820 million in pro forma 2021E Adjusted EBITDA, which significantly enhances Crestwood's financial strength and flexibility. The transaction will be deleveraging with an expected FY 2022 leverage ratio below 3.5x. This will result in a stronger balance sheet and substantial liquidity under Crestwood's current revolving credit facility, providing even greater flexibility to execute its future business plans. This increased cash flow scale and enhanced credit profile is expected to be viewed positively by the rating agencies.

Accelerates return of capital strategy: Based on the long-term outlook of the combined business, the transaction drives substantial accretion to distributable cash flow (DCF) per unit, resulting in a robust distribution coverage ratio in FY 2022 in excess of 2.0x. As a result of the improved long-term free cash flow profile of the business, the combination will allow Crestwood to accelerate its return of capital strategy to its common unitholders. In connection with the close of the transaction, Crestwood expects to increase its common distribution to $2.62/unit annually, representing an approximate 5% increase year-over-year. Additionally, Crestwood continues to maintain flexibility under its previously announced $175 million common and preferred unit buyback program to further enhance returns and cost of capital opportunistically.

Advances leading G&P sustainability initiatives: Following the close of the transaction, Crestwood will implement its MLP leading sustainability best practices as it assumes operatorship of the acquired assets in the Williston and Delaware Basins. This includes managing the acquired assets with an intense focus on flare minimization and increased methane emissions monitoring, as well as a strong commitment to biodiversity, environmental stewardship, safety, and community engagement efforts. Additionally, Crestwood intends to incorporate material ESG metrics including a baseline of Scope 1 and Scope 2 emissions from the acquired assets that it will publish in its 2021 sustainability report along with a strategy to further manage its carbon footprint across the Williston Basin.

Transaction Details

Under the terms of the agreement, Oasis Petroleum Inc. (NASD: OAS) ("Oasis Petroleum") will receive $150 million in cash plus an aggregate of 21.0 million common units in exchange for its 33.8 million common units held in Oasis Midstream. Oasis Midstream public unitholders will receive an aggregate of 12.9 million Crestwood common units in exchange for the 14.8 million Oasis Midstream common units outstanding. This represents a total transaction value of approximately $1.8 billion, including the assumption of Oasis Midstream's outstanding debt of approximately $660 million as of September 30, 2021. In addition, Oasis Petroleum will receive a $10 million cash payment for its ownership of the General Partner interest of Oasis Midstream. Upon closing, Oasis Midstream former unitholders will own approximately 35% of Crestwood's outstanding common units, of which, approximately 22% will be owned by Oasis Petroleum.

In connection with the transaction, Oasis Petroleum will receive the right to appoint two representatives to Crestwood's Board of Directors, subject to on-going ownership thresholds. This transaction has been unanimously approved by the Boards of Directors of both general partners of Crestwood and Oasis Midstream. The transaction terms were reviewed, negotiated and approved by the conflicts committee of the board of directors of the general partner of Oasis Midstream. Additionally, Oasis Petroleum has agreed in a Support Agreement to vote its Oasis

Midstream common units representing approximately 70% of Oasis Midstream common units in favor of the transaction.

(Emphasis in original).

## II. The Proxy Omits Material Information

23. Defendants filed a materially incomplete and misleading Proxy with the SEC, despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's public unitholders, to ensure that it did not contain any material misrepresentations or omissions. Thus, the Proxy should be amended immediately, so public unitholders can make an informed decision when providing written consent to approve the Merger Agreement and the Proposed Transaction.

24. First, the Proxy fails to disclose material information concerning the financial projections for Oasis Midstream and Crestwood.

25. To start, the Proxy omits critical financial projections for the Company and Crestwood, specifically the net income/loss projections. The Defendants elected to summarize the Company's and Crestwood's financial projections, but they excised and failed to disclose the net income/loss projections. Not only is net income/loss a critical metric for shareholders evaluating the financial standing of a company, *see Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019) ("The disclosure of Precipio's net income/loss figures could have significantly altered the total mix by informing shareholders about pre-merger Precipio's net income/loss."), but it is also a GAAP metric that allows direct comparison between different enterprises.

26. Next, with respect to the Oasis Midstream projections the proxy fails to disclose: (i) the line items underlying Adjusted EBITDA, Distributable Cash Flow, Free Cash Flow, and Net Leverage; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Proxy at 64.

27. Likewise, with respect to the Crestwood projections the proxy fails to disclose: (i)

the line items underlying Adjusted EBITDA, Distributable Cash Flow, Free Cash Flow, and Net Leverage; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Proxy at 65.

28. The omission of this information renders the Oasis Midstream and Crestwood projections disclosed by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that stockholders exercise their corporate voting rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See id.* (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

31. Second, the Proxy omits material information with regard to Jefferies' financial

analyses performed in connection with the Proposed Transaction.

32. With respect to the *Discounted Cash Flow Analysis* for Oasis Midstream, the Proxy fails to disclose: (i) the terminal values; (ii) the weighted average cost of capital; and (iii) the inputs and assumptions underlying Jefferies selection of a range of discount rates of 11.28% to 12.28% and range of EBITDA exit multiples of 6.5x to 7.5x. Proxy at 60.

33. With respect to the *Discounted Cash Flow Analysis* for Crestwood, the Proxy fails to disclose: (i) the terminal values; (ii) the weighted average cost of capital; and (iii) the inputs and assumptions underlying Jefferies selection of a range of discount rates of 10.37% to 11.37% and range of EBITDA exit multiples of 7.5x to 8.5x. Proxy at 60.

34. These key inputs are material to the Company's unitholders, and its omission renders the summary of Jefferies' *Discounted Cash Flow Analysis* for Oasis Midstream and Crestwood incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in

light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Company unitholders cannot evaluate for themselves the reliability of Jefferies' *Discounted Cash Flow Analysis* for Oasis Midstream and Crestwood, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company and Crestwood, or were the result of an unreasonable judgment by Jefferies, and make an informed decision regarding whether to approve the Merger Agreement and the Proposed Transaction.

35. Finally, with respect to Jefferies' *Selected Public Companies Analysis* for Oasis Midstream and Crestwood, the Proxy fails to disclose: (i) the individual multiples and metrics observed for the companies selected as comparable; and (ii) the enterprise values of the selected companies. Proxy at 58-60.

36. In sum, omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to approve the Merger and the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the

use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

41. Defendants have issued the Proxy with the intention of soliciting the Company's public common unitholders support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding: (i) the financial projections for Oasis Midstream and Crestwood; and (ii) the valuation analyses performed by Jefferies.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's unitholders although they could have done so without extraordinary effort.

43. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Jefferies reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Jefferies, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the Company's and Crestwood's projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Jefferies' analyses in connection with their receipt of the fairness opinion, question Jefferies as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The

Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, and preparation and review of the Company's projections.

45. Oasis Midstream is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to provide informed written consent if such misrepresentations and omissions are not corrected. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Oasis Midstream within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Oasis Midstream, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

C. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: December 16, 2021

**MONTEVERDE & ASSOCIATES PC**

*/s/* Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*